UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LASEAN SMITH,

Plaintiff,

-v-

NEW YORK CITY HOUSING AUTHORITY; MICHAEL ROBERTSON; and GENESA CAMPBELL,

Defendants.

**MEMORANDUM & ORDER**
25-CV-283 (NRM) (MMH)

NINA R. MORRISON, United States District Judge:

Plaintiff LaSean Smith, proceeding *pro se*, brings this action against the New York City Housing Authority ("NYCHA" or "Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). She alleges disability discrimination and retaliation.

Currently before this Court is Defendant's motion to dismiss for failure to state a claim. For the reasons that follow, Defendant's motion is granted as to Plaintiff's disability discrimination claim, and denied as to Plaintiff's retaliation claim.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the Amended Complaint, which the Court takes as true for purposes of the instant motion.

Smith began working for NYCHA on May 12, 2022, and was supervised in her position by Assistant Manager Genesa Campbell ("Campbell") and Manager Michael

Robertson ("Robertson"). Am. Compl. ("Compl.") at 13, ECF No. 6.[1] She alleges that between August 12, 2022 and May 31, 2023, she experienced workplace discrimination on the basis of her disability and was ultimately terminated in a retaliatory manner. *Id.* at 4.

During an August 2022 evaluation, management informed Smith that tenants were complaining about her. Defs.' Mot. to Dismiss ("Mot."), Ex. A ("EEOC Charge") at 7, ECF No. 18-2.[2] Smith contends that as per NYCHA policy, all complaints against employees must be in writing. *Id.* at 8. When Smith asked to see copies of the complaints, Campbell replied, "I don't need to show you anything." *Id.* at 7. In March 2023, Smith was again told by management that both tenants and coworkers were complaining about her. *Id.* No proof of the complaints was provided. *Id.* As such, when Smith "received an unsatisfactory rating" on her evaluation, she refused to sign it. *Id.*

Smith also states she "was bullied, harassed, lied on, [and] marched in [and] out of [] Robertson's office by [] Campbell for a year in front of [her] other co-workers." Compl. at 6 (citation modified). She alleges that Robertson "allowed, collaborated,

---

[1] All page references use the pagination provided by the Electronic Case Filing System unless otherwise noted.

[2] Because Plaintiff did not include her Equal Employment Opportunity Commission ("EEOC") Charge in her pleading, citations refer to the Charge as included in Defendant's motion to dismiss. A court may look to external documents if incorporated by reference in the pleading. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Furthermore, courts consider EEOC Charges to be "integral" to complaints such that they may be considered on a motion to dismiss even when not formally incorporated. *Marcus v. Leviton Mf'g Co., Inc.*, 15-CV-656, 2016 WL 74415, at *1 n.1 (E.D.N.Y. Jan. 6, 2016).

participated, [and] schemed to allow another woman in the workplace to verbally harass [and] bully another female employee anytime she felt like it . . . he sat back and did nothing to stop it." *Id.* at 6.

Smith maintains that throughout her tenure at NYCHA, she "suffered from a significant corneal abrasion that affected her vision [and] ran the risk of progressing to permanent blindness if not cared for properly." *Id.* ¶ 9. The abrasion "required extensive medical treatment," and when Smith attempted to take a day off due to "significantly blurry vision," she was "told that she should come in to work and 'just lay down.'" *Id.* ¶¶ 15–16.

Smith formally complained to Jacqueline Hipps of NYCHA's Human Resources Department ("H.R.") on or around March 25, 2023 regarding the interactions she was having with management. *Id.* at ¶ 18. No action was taken by NYCHA in response. *Id.* Smith also claims that she contacted H.R. in April, and an unspecified employee for the department informed her that there were no complaints present in her file. EEOC Charge at 8. When Smith inquired Robertson about this lack of documentation, Robertson responded that "we [NYCHA] don't submit everything to H.R." *Id.* (citation modified).

In May 2023, Smith had another evaluation, which she describes as "identical" to the previous one in March. *Id.* She still was not provided with copies of the complaints. *Id.* Smith then reported these concerns to her union grievance representative, shop steward, and president, all of whom were unresponsive. *Id.* She

was eventually told that she would have a meeting on June 16, 2023, but was terminated prior to that date. *Id.*

Smith was officially terminated from her position on or about May 31, 2023. Compl. ¶ 19. She alleges that the termination was retaliation for complaining to Ms. Hipps and the "discriminatory conduct she was being subjected to." *Id.* Smith later filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). In the Charge, dated November 13, 2023, Smith states that she was "subjected to wrongful and retaliatory termination based on [her] sex in violation of Title VII." EEOC Charge at 8 (citation modified). Smith received the EEOC Notice of Right to Sue on October 25, 2024. She timely filed suit in this Court.

## II. Procedural History

Plaintiff, proceeding *pro se*, filed her initial complaint on January 14, 2025. Initial Compl., ECF No. 1. At the time, the complaint alleged sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). The Court dismissed Plaintiff's initial complaint with leave to amend on April 7, 2025 due to her failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). Order Dismissing Compl., ECF No. 5.

Plaintiff then filed an amended complaint on April 28, 2025. In the amended complaint, Plaintiff no longer includes claims based on sex discrimination, but instead alleges that NYCHA discriminated against her because of her disability. Defendant filed the instant motion to dismiss on September 26, 2025.

**DISCUSSION**

To sufficiently state a claim and withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A well-pleaded complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff cannot make legally conclusory allegations or simply recite the elements of their cause of action in their pleading. *Twombly*, 550 U.S. at 557.

Courts construe a plaintiff's complaint liberally, accepting factual allegations as true and granting all reasonable inferences for the plaintiff. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2008). This is especially so for *pro se* plaintiffs, who "must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. Keycorp*, 521 F.3d 202, 214 (2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)).

As an initial matter, Plaintiff improperly invoked Title VII rather than the ADA for her disability discrimination claims. In her opposition to the motion to dismiss, Plaintiff asks that her claims nevertheless be considered under the ADA, or that she be granted leave to amend. Opp'n to Mot. to Dismiss ("Opp'n") at 1–2, ECF No. 20. The Court construes the opposition as a motion to amend the complaint. Given that Plaintiff is *pro se*, and employment discrimination claims under the ADA are analyzed using the same legal standard as in the Title VII context, *see McBride*

*v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999), that application is granted. The Court will thus treat Plaintiff's disability discrimination claims as if properly pleaded under the ADA.

## I. Disability Discrimination

Plaintiff first raises a claim of discrimination on the basis of disability. However, this claim has not been administratively exhausted.

### A. <u>Exhaustion of Administrative Remedies</u>

To pursue an ADA action in federal court, Plaintiff must first exhaust all administrative remedies. *See Johnson v. Xylem Inc.*, 613 F. Supp. 3d 677, 679-80 (W.D.N.Y. 2020). This requirement is met if Plaintiff files a complaint with the EEOC or the equivalent state agency within 300 days of the discriminatory conduct and receives a Right to Sue Notice from the Commission. 42 U.S.C. §§ 2000e-5(e)(1); *see also Zerilli-Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74 (2d Cir. 2003) (rejecting the use of equitable tolling for an EEOC complaint and upholding the 300-day limitations period and required receipt of EEOC Right to Sue Notice). If failure to exhaust remedies "is clear from the face of the complaint (and incorporated documents)," a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted. *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

Ordinarily, claims in federal court are only exhausted if those same claims were presented in the EEOC Charge. However, a plaintiff may pursue a claim in a

civil action that was not initially raised in the Charge if it is "reasonably related" to the one or more of the claims included in the Charge. *Gomez*, 191 F. Supp. 3d at 299 (citation omitted). This is because "EEOC charges frequently are filled out by employees without the benefit of counsel," and "their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)).

A reasonable relationship between claims exists if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Gomez*, 191 F. Supp. 3d at 299 (citation omitted). In other words, the "factual allegations made in the [EEOC charge] can be fairly read to encompass the claims ultimately pleaded in a civil action." *Id.* (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008)). If the facts found in the EEOC Charge imply two (or more) forms of discrimination — even if the Charge itself only expressly specifies one — the claims are reasonably related to each other. *Littlejohn*, 795 F.3d at 322 (citation omitted). By contrast, administrative claims and pleaded claims are not found to be reasonably related if one focuses solely on a form of discrimination wholly distinct from the other. *See Gomez,* 191 F. Supp. 3d at 299 (dismissing Plaintiff's sex discrimination claims because her EEOC complaint focused "exclusively on Defendants' failure to accommodate her disability and wrongful termination due to her disability"); *see also Acheampong v. N.Y.C. Health and Hospitals Corp.*, No. 11CV9205-LTS-SN, 2015 WL 1333242, at *9–10 (S.D.N.Y.

March 25, 2015) (dismissing Plaintiff's Title VII claims because the EEOC complaint only alleged disability discrimination under the ADA).

Here, Plaintiff has failed to exhaust her administrative remedies, as her present claim of disability discrimination is not "reasonably related" to the claim of sex discrimination alleged in her EEOC Charge. *Id.* at 10. In the Charge, Plaintiff did not list disability under the "Discrimination Based On" section, and the remaining sections of the Charge lack any mention or implication of a disability that would correspond with the pleading. Indeed, the EEOC Charge provides details on Plaintiff's employment evaluations, supposed complaints about her from tenants and coworkers, and management's failure to show proof of these complaints, but does not mention Plaintiff's corneal abrasion or management's response to any related medical issues. *See* EEOC Charge at 7–8. There is thus no basis to believe that the EEOC Charge "placed the employer on notice" that Plaintiff had a disability or that "such claims might be raised" in a civil action. *Mathirampuzha*, 548 F.3d at 77.

Because Plaintiff's disability discrimination claim is unexhausted, Defendant's motion to dismiss is granted as to that claim.[3]

## II. Retaliation

### A. Exhaustion of Administrative Remedies

By contrast, Plaintiff has plainly exhausted the administrative remedies for her retaliation claim. In the field labeled "Discrimination Based On," Plaintiff listed

[3] Because the Court finds that Plaintiff's disability discrimination claim is unexhausted, it need not address Defendant's argument that this claim nevertheless fails on the merits.

"Retaliation." EEOC Charge at 7. She also expressly stated that her employer engaged in "wrongful and retaliatory termination." *Id.* at 8. She further told the EEOC that she had voiced her concerns about her status at work to various members of her union and to NYCHA's H.R. department, and alleged that she was "railroaded into being terminated." *Id.* These facts mirror those of the Amended Complaint, which articulates how Plaintiff was "terminated by NYCHA in a retaliatory manner after complaining of the mistreatment and discriminatory conduct she was being subjected to." Compl. ¶ 19.

B. Merits

The Court now turns to the merits of the retaliation claim. To establish a prima facie case of retaliation under the ADA, Plaintiff must show that "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 525 (E.D.N.Y. 2019) (alterations in original) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). The first, third, and fourth elements are in dispute. The Court analyzes each in turn.

1. Protected Activity

Plaintiff complained to Jacqueline Hipps of H.R. on March. 25, 2023, "regarding the discriminatory treatment," and was terminated from her position on May 31, 2023. Compl. ¶¶ 18–19. Complaints to management, including those

regarding alleged disability discrimination, constitute protected activity. *See, e.g.*, *Woolf v. Bloomberg L.P.*, No. 16-CV-6953 (PKC), 2019 WL 1046656, at *13 (S.D.N.Y. Mar. 5, 2019), *aff'd sub nom. Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020), and *aff'd sub nom. Woolf v. Strada*, 792 F. App'x 143 (2d Cir. 2020); *Castagnozzi v. Phoenix Beverages, Inc.*, 208 F. Supp. 3d 461, 478 (E.D.N.Y. 2016).

Defendants claim that this complaint was insufficient because Plaintiff failed to adequately plead the substance of the alleged discrimination in her complaint to H.R. Mot. at 13. However, such an argument goes to the merits of the underlying discrimination claim, which is not at issue here. It is well established that "[a] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful." *Treglia*, 313 F.3d at 719. So long as the plaintiff's protected activity was motivated by "a good faith, reasonable belief that the employer's conduct qualified as an unlawful employment practice under the statute," it is immaterial whether the employer actually violated Title VII or the ADA. *Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d 678, 680–81 (2d Cir. 2016) (citation modified). Plaintiff's complaint to Hipps thus constitutes a protected activity for purposes of an ADA retaliation claim.

2. Adverse Action

An adverse employment action by an employer is one that is "materially adverse with respect to the terms and conditions of employment." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citation modified). "Examples of materially adverse changes include termination of employment, a demotion

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Here, Plaintiff's alleged adverse action is her termination on May 31, 2023. That plainly constitutes an adverse action under the ADA. *See, e.g.*, *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45–46 (2d Cir. 2025).

3. Causal Connection

Finally, Defendants argue that Plaintiff has failed to show a causal connection between her protected activity and adverse action.

The Second Circuit has held that to sustain a retaliation claim, a plaintiff must show that the protected activity was a "but for" cause of the adverse employment action. *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024); *see also Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019). At the pleadings stage, this causal link may be demonstrated either "through direct evidence of retaliatory animus or 'indirectly, by showing that the protected activity was followed closely by discriminatory treatment.'" *Sharikov*, 103 F.4th at 170 (quoting *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023)). "Temporal proximity between the adverse action and the protected activity is sufficient to establish a causal connection." *Anderson v. City of New York*, 712 F. Supp. 3d 412, 433 (S.D.N.Y. 2024) (citing *Natofsky*, 921 F.3d at 353).

Here, Plaintiff alleges that she was terminated from her position "in a retaliatory manner" just two months after her formal complaint to Hipps. Compl. ¶¶ 18–19. The Second Circuit has not drawn "'a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish' causation between protected activity and retaliatory conduct." *Sampson v. Int'l Union of Operating Eng'rs Loc. 14-14B*, No. 22-CV-3588 (DG) (RER), 2023 WL 8530116, at *6 (E.D.N.Y. July 10, 2023) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). However, courts in this circuit regularly find that a temporal proximity of about three months is sufficient to establish the requisite causal connection at the pleadings stage. *See, e.g.*, *Oliver v. City of New York*, No. 19-CV-11219 (PGG), 2026 WL 2271368, at *39 (S.D.N.Y. Aug. 6, 2026) ("[T]he less-than-three-month gap between the December 27, 2018 settlement and Oliver's March 22, 2019 arrest is sufficient to establish a causal connection for purposes of making out a prime facie case."); *Garcia v. Yonkers Bd. of Educ.*, No. 15-CV-0767 (NSR), 2018 WL 4007648, at *7 (S.D.N.Y. Aug. 21, 2018) ("The three month period between Defendant's receipt of Plaintiff's police report and the adverse employment action would, alone, be enough to meet a causal connection."), *aff'd*, 803 F. App'x 441 (2d Cir. 2020).

Particularly given the more liberal *pro se* pleading standards that apply here, the Court finds that the close temporal proximity between Plaintiff's complaint and termination is sufficient to establish a causal connection for purposes of showing retaliation under the ADA.

Plaintiff has therefore adequately stated a claim for retaliation under the ADA. Defendant's motion to dismiss is denied as to that claim.

C. Retaliation under NYHRL and NYCHRL

"Retaliation claims under [NYSHRL] and NYCHRL are governed by the same standard as retaliation claims under the ADA." *Doall v. Suffolk Cnty. Fam. Ct.*, No. 05-CV-5891 (ADS) (AKT), 2008 WL 11412188, at *6 (E.D.N.Y. Nov. 26, 2008) (citing *Treglia*, 313 F.3d at 719). Because Plaintiff has sufficiently stated a claim for retaliation under the ADA, she has also done so under both NYSHRL and NYCHRL.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED as to Plaintiff's discrimination claim and DENIED as to Plaintiff's retaliation claims.

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 10, 2026
Brooklyn, New York